UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                              :
MAXUM INDEMNITY COMPANY,                                      :
                                                              :
                         Plaintiff,                           :
                                                              :
                                                              :
              -v-                                             :
                                                              :
A ONE TESTING LABORATORIES, INC. aka                          :
A-1 TESTING LABORATORIES, INC., 610                           :
WEST REALTY LLC, RIVERVIEW WEST                               :
CONTRACTING LLC, B&V CONTRACTING                              :
ENTERPRISES, INC. and ACE INSPECTION                          :
AND TESTING SERVICES, INC.,                                   :
                                                              :
                         Defendants.                          :
                                                              :
--------------------------------------------------------------X

┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: December 10, 2015    │
└─────────────────────────────────┘

14-cv-4023 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Plaintiff Maxum Indemnity Company, an insurer, seeks a declaration that it

does not owe a duty to defend or indemnify its insured, defendant A-1 Testing

Laboratories, in a lawsuit (the "Underlying Action") that defendant 610 West Realty

LLC filed in state court against A-1 and defendants Riverview West Contracting

LLC, B&V Contracting Enterprises, Inc., and Ace Inspection and Testing Services,

Inc. (ECF No. 1.) Now before the Court is Maxum's motion for summary judgment.

(ECF Nos. 29 & 32.) The crux of Maxum's argument is that the general liability

policy it entered into with A-1 does not cover 610 West's theory of liability in the

Underlying Action because 610 West does not allege an "occurrence" resulting in

"property damage" that occurred during the policy period.[1]

---

[1] Maxum also alleges that certain exclusions in the policy separately bar coverage; because the Court finds that Maxum is entitled to summary judgment on its primary theories of non-coverage, it does not reach these alternatives.

In the Underlying Contract, 610 West has asserted breach of contract, negligence, and fraudulent conveyance causes of action against A-1.  These causes of action stem from allegations that A-1's faulty workmanship in performing certain inspections required 610 to undertake repair work.  As a matter of law, the general liability insurance contract between Maxum and A-1 does not cover such allegations, and even if it did the damage occurred outside of the policy period.  Therefore, because there is no genuine issue of material fact at issue in this case, the motion is GRANTED.

I.      FACTUAL BACKGROUND

   A.      The Policy

Maxum provided A-1 with commercial general liability coverage between February 28, 2011 and February 28, 2012.  (Pl.'s 56.1[2] ¶ 1; Policy[3] at 7.)  The contract provided that Maxum would "pay those sums that [A-1] becomes legally obligated to pay as 'damages' because of 'bodily injury' or 'property damage' to which this insurance applies."  (Pl.'s 56.1 ¶ 2; Policy at 9.)  It established that the insurance applied "only if … [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' … and … occurs during the policy period."  (Id.)

---

[2] The notation "Pl.'s 56.1" refers to Maxum's statement of undisputed material facts pursuant to Local Rule 56.1, available as ECF No. 35.  This opinion only relies on statements of fact that defendants did not dispute in their counter statement, which is available as ECF No. 41.

[3] The notation "Policy" refers to the contract for Policy Number GLP 6014817-01, which established the insurance relationship between Maxum and A-1.  The policy is available as ECF No. 34, Exh. A.  Because the policy does not have a single pagination scheme throughout, page numbers provided refer to the exhibit's pagination.

The policy defined "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Pl.'s 56.1 ¶ 3; Policy at 24.)  It provided two disjunctive definitions of "property damage:"

> Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Id.)

The contract further provided that Maxum would defend A-1 "against any 'suit' seeking those damages," but would have no duty to defend A-1 "against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  (Pl.'s 56.1 ¶ 2; Policy at 9.)  An endorsement incorporated into the policy specifically provided that "[t]his insurance does not apply to any claim or 'suit' for breach of contract."  (Pl.'s 56.1 ¶ 9; Policy at 39.)[4]

B.    The Underlying Action

In June 2013, A-1, Riverview, and B&V received a "Summons with Notice" alerting them that 610 West was suing them "to recover damages for each Defendant's breach of contract and negligence in connections with the construction of a building at 608 West 149th Street, New York, NY, and for indemnity."  (Pl.'s 56.1 ¶ 11; ECF No. 34, Exh. B.)

---

[4] As discussed in note 1, supra, Maxum argues that other portions of the contract separately establish that it is not required to indemnify or defend A-1 in the Underlying Action.  The Court's description above only encompasses the contractual provisions relevant to the grounds discussed in this decision.

3

In October, Maxum sent A-1 a letter explaining that "[t]he summons with notice [gave] little information with which to establish a true evaluation of the covered and/or uncovered damages," and that Maxum was therefore "continu[ing] to investigate this matter under a full reservation of rights." (Pl.'s 56.1 ¶ 15; ECF No. 34, Exh. D, at 1.) Maxum's letter also explained that it had retained counsel "to secure an extension of time for A One to appear, move or otherwise act and demand plaintiff provide more information through a formal complaint," which would put Maxum "in a better position to evaluate its obligations regarding defense and indemnity for the action." (Id.)

In November, 610 West filed its complaint in the Underlying Action ("UAC"). (Pl.'s 56.1 ¶ 16.) The UAC alleged that 610 West was the sponsor of project to build condominiums and in 2005 had hired Riverview as a general contractor for the construction. (Pl.'s 56.1 ¶¶ 17-18; UAC[5] ¶ 6-7.) It further alleged that Riverview had, during 2004 and 2005, hired B&V as a subcontractor to provide drywall and carpentry work and A-1 as a subcontractor "to perform controlled inspections in connection with, among other things, the 'Fire Stops.'" (Pl.'s 56.1 ¶¶ 18-19; UAC ¶¶ 9-10.) According to the UAC, B&V's work was defective, a fact that neither Riverview nor A-1 detected or caused to be corrected, and which was only discovered by 610 West sometime prior to June 2010. (Pl.'s 56.1 ¶ 20; UAC ¶¶ 11-14.) As a result, the UAC alleged, 610 West was required to remediate and repair the defective work over a number of years. (Pl.'s 56.1 ¶ 20; UAC ¶¶ 15-16.)

---

[5] The notation "UAC" refers to the complaint in the Underlying Action, 610 West Realty LLC v. Riverview West Contracting LLC, et al., No. 155357/13 (N.Y. Sup. Ct. 2013), which is available as ECF No. 34, Exh. E.

The UAC asserted separate breach of contract and negligence causes of action against Riverview, B&V, and A-1.  (UAC ¶¶ 18-46.)  The two[6] causes of action asserted against A-1 mirrored each other; the breach of contract claim alleged that A-1 "breached its duties and obligations under the A-1 Testing Subcontract by failing to perform its controlled inspection services with reasonable care and in accordance with accepted industry standards and practices," while the negligence claim alleged that A-1 "owed a duty to plaintiff to perform its controlled inspection services with reasonable care and in accordance with accepted industry standards and practices," and breached that duty "by performing its controlled inspection services in a negligent fashion and contrary to accepted industry standards and practices."  (Pl.'s 56.1 ¶¶ 21; UAC ¶¶ 39, 43-44.)

In March 2014, Maxum's counsel wrote to A-1 to "advise [it] of Maxum's coverage position based upon the allegations and information presently known."  (Pl.'s 56.1 ¶ 25; ECF No. 34, Exh. F, at 1.)  The letter explained that, in Maxum's view, various exclusions "bar[red] coverage for certain claims asserted in this matter," and that Maxum was investigating "to determine whether there are any damages to which the [policy's] exclusions do not apply."  (ECF No. 34, Exh. F., at 7.)  The letter also advised that "[t]here may be other reasons why no coverage is available."  (Id.)

Notwithstanding the determination of non-coverage, the letter went on to explain that Maxum would continue defending A-1 in the Underlying Action.  (Pl.'s

---

[6] The UAC also asserts an additional four causes of action against A-1 and Ace, all for fraudulent conveyance.  No party has argued that these causes of action provide an independent basis for coverage in the instant action.

56.1 ¶ 26; ECF No. 34, Exh. F, at 7.)  This agreement to provide defense counsel was, however, subject to an explicit statement that Maxum did not "waive the right … to contest the duty to defend, or indemnify or seek to recover back defense costs paid on behalf of [A-1]."  (Id.)  Specifically, Maxum "reserve[d] its right to commence a coverage action to obtain a declaration of no coverage and/or recover back defense costs."  (Id.)

In June 2014, Maxum filed the instant action seeking a declaration of non-coverage and a determination that it was entitled to recoup defenses costs expended in the Underlying Action.  (ECF No. 1.)  It filed an amended complaint in August 2015, (ECF No. 25) and moved for summary judgment in September.  (ECF Nos. 29 & 32.)  That motion became fully briefed on November 2, 2015.  (ECF No. 46.)

II.    LEGAL PRINCIPLES

A.    Summary Judgment Standard

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  The Court's function on summary judgment is to determine whether there exist any

genuine issues of material fact to be tried, not to resolve any factual disputes.  .
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)

Once the moving party has asserted facts showing that the nonmoving
party's claims cannot be sustained, the opposing party must set out specific facts
showing a genuine issue of material fact for trial.  Price v. Cushman & Wakefield,
Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d
255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture
as to the true nature of the facts to overcome a motion for summary judgment,"
because "[m]ere conclusory allegations or denials . . . cannot by themselves create a
genuine issue of material fact where none would otherwise exist."  Hicks v. Baines,
593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d
at 685 ("In seeking to show that there is a genuine issue of material fact for trial,
the non-moving party cannot rely on mere allegations, denials, conjectures or
conclusory statements, but must present affirmative and specific evidence showing
that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the
outcome of the suit under the governing law"—will properly preclude the entry of
summary judgment.  Anderson, 477 U.S. at 248; see also Matsushita Elec. Indus.
Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the
nonmoving party "must do more than simply show that there is some metaphysical
doubt as to the material facts").  The Court should not accept evidence presented by
the nonmoving party that is so "blatantly contradicted by the record . . . that no

reasonable jury could believe it." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>see also</u> <u>Zellner v. Summerlin</u>, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

    B.    <u>General Commercial Liability Insurance Coverage</u>

Under New York law, an insurer's duty to defend is far broader than its duty to indemnify. <u>Maryland Cas. Co. v. Cont'l Cas. Co.</u>, 332 F.3d 145, 160 (2d Cir. 2003) (quoting <u>Erdman v. Eagle Ins. Co.</u>, 658 N.Y.S. 2d 463, 466 (N.Y. App. Div. 1997)). "An insurer must defend whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage." <u>Id.</u> (quoting <u>Cont'l Cas. Co. v. Rapid-Am. Corp.</u>, 609 N.E.2d 506, 509 (N.Y. 1993)). "The New York Court of Appeals has eschewed 'wooden application of the four corners of the complaint rule,' in favor of 'a rule requiring the insurer to [also] provide a defense where, notwithstanding the complaint allegations, underlying facts made known to the insurer create' a reasonable possibility of coverage." <u>QBE Ins. Corp. v. Adjo Contracting Corp.</u>, 997 N.Y.S. 2d 425, 440-41 (N.Y. App. Div. 2014) (quoting <u>Fitzpatrick v. Am. Honda Motor Co.</u>, 575 N.E.2d 90, 92, 95 (N.Y. 1991)). However, "an insurer owes its insured no duty of defense 'if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured.'" <u>Maryland Cas. Co.</u>,

8

332 F.3d at 160 (quoting Frontier Ins. Co. v. State, 662 N.E.2d 251, 253 (N.Y. 1995)).

New York law permits insurers to provide their insureds with a defense subject to "a reservation of rights to, among other things, later recoup their defense costs upon a determination of non-coverage." Law Offices of Zachary R. Greenhill P.C. v. Liberty Ins. Underwriters, Inc., 9 N.Y.S.3d 264, 267-68 (N.Y. App. Div. 2015). Courts have consistently determined that insurers are entitled to reimbursement of defense costs upon a determination of non-coverage so long as the reservation was communicated to the insured, who did not expressly refuse to consent to the reservation. See, e.g., Max Specialty Ins. Co. v. WSG Investors, LLC, No. 09-CV-5237, 2012 WL 3150579, at *8 (E.D.N.Y. April 20, 2012); Axis Reinsurance Co. v. Bennett, No. 07 Civ. 7924, 2008 WL 2600034, at *2 (S.D.N.Y. June 27, 2008); Gotham Ins. Co. v. GLNX, Inc., No. 92 Civ. 6415, 1993 WL 312243, at *4 (S.D.N.Y. Aug. 6, 1993); Dupree v. Scottsdale Ins. Co., 947 N.Y.S.2d 428, 429 (N.Y. App. Div. 2012).

III.   DISCUSSION

Maxum argues that this case is governed by the principles set forth in George A. Fuller Co. v. United States Fidelity & Guaranty Co., 613 N.Y.S.2d 152 (N.Y. App. Div. 1994). The Court agrees.

In George A. Fuller, the insured was the general contractor and construction manager of a building project in Manhattan. Id. at 154. The insured was sued by its client for failing to "adequately and properly … supervise the installation of the

building's wood flooring and an aluminum curtain wall with windows and store front glazing and to provide for the installation of a code compliant water metering system." Id.  As a result, the client alleged, "the flooring buckled and cracked," among other problems.  Id.  The client sought damages for the cost of the necessary repairs and resulting cost overruns and asserted a number of theories, including breach of contract and negligent breach of the duty of care.  Id.   The insurer "disclaimed coverage as to the entire claim on the ground that there had been no 'occurrence' as defined in the policy."  Id.  The definition of "occurrence" in that contract was the same as that found in the instant policy: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. at 153.

The insured sued its insurer and on summary judgment the trial court declared that the insurer was obligated to provide a defense in the underlying action.  Id. at 154-55.  The insurer appealed, and the First Department reversed, concluding that the insurer was entitled to a declaration of non-coverage.  Id. at 155.

In the First Department's view, the underlying complaint did "not allege an 'occurrence' resulting in 'property damage' as contemplated by the comprehensive general liability policy at issue."  Id.  Instead, "the allegations all relate[d] to [the insured's] failure to meet its contractual obligations."  Id.  This was so notwithstanding the inclusion of causes of action for negligence in the underlying action:  "A contract default under a construction contract is not transformed into an

'accident, including continuous or repeated exposure to substantially the same general harmful conditions' by the simple expedient of alleging negligent performance or negligent construction." Id.

Based on the requirement that covered damage result from an "occurrence," the First Department concluded that "[t]he was never intended to provide contractual indemnification for economic loss to a contracting party because the work product contracted for is defectively produced," and that requiring the insurer to defend "would transform [it] into a surety for the performance of [the insured's] work." Id.  Because such an interpretation was inconsistent with the language of the contract, the court declared that the insurer did not owe a duty to defend.[7]

The George A. Fuller decision accurately captures New York law.  Its holding is consistent with those established in cases both prior to that decision, see Parkset Plumbing & Heating Corp. v. Reliance Ins. Co., 448 N.Y.S.2d 739, 740 (N.Y. App. Div. 1982), and subsequent to it, see Exeter Bldg. Corp. v. Scottsdale Ins. Co., 913 N.Y.S.2d 733, 735-36 (N.Y. App. Div. 2010).

There can be no doubt that the allegations 610 West includes in the UAC bring this matter within the "no occurrence, no coverage" rule for commercial general liability policies under New York law.  The damages 610 West seeks to recover represent the cost of repairing the allegedly defective work in order to bring it into compliance with the underlying contracts, industry standards, and legal

---

[7] In George A. Fuller, as in the instant matter, an exclusion from coverage for damage to the insured's work product provided an alternative basis for the insurer's entitlement to a declaration of non-coverage.  See George A. Fuller Co. v. U.S. Fid. & Guar. Co., 613 N.Y.S.2d 152, 156 (N.Y. App. Div. 1994).

requirements.  (Pl.'s 56.1 ¶ 37.)  New York law is clear that the recitation of a cause of action labeled "negligence" in the underlying complaint does not suffice to create coverage for faulty work product under a commercial general liability insurance policy.  Indeed, the fact that the Underlying Action is solely concerned with the economic loss allegedly caused by A-1 and others' alleged breach of contract is even more apparent in this case than it was in <u>George A. Fuller</u>, in which the underlying action alleged "buckled and cracked" flooring and "widespread water infiltration." 613 N.Y.S.2d at 154.

A-1's counterargument misses the mark.  A-1 argues that "facts have been adduced establishing that A-1 did not perform fire stopping inspections, as alleged in the [UAC]."  (ECF No. 39, at 9.)  Its briefing aims to establish that "the likelihood that the allegations in the [UAC] have no merit is high."  (<u>Id.</u> at 12.)  This may be so, but the <u>merits</u> of the allegations in the underlying action have no direct relevance to Maxum's obligation to indemnify or defend A-1; that legal question turns on the <u>character</u> of the underlying allegations.  Because those allegations relate exclusively to A-1's alleged failure to complete its contractual duties, they do not stem from an occurrence and do not create a reasonable possibility of coverage.

Even if the claims asserted in the Underlying Action were properly connected to an "occurrence," under the definitions in the policy they would have occurred prior to the policy period and thus be excluded from coverage.  As noted above, under the contract between Maxum and A-1, "property damage" that reflects "loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."  (Pl.'s

56.1 ¶ 3; Policy at 24.)  "New York follows the 'injury-in-fact' test which 'rests on when the injury, sickness, disease or disability actually began.'"  <u>Downey v. 10 Realty Co., LLC</u>, 911 N.Y.S.2d 67, 67 (N.Y. App. Div. 2010) (quoting <u>Cont'l Cas. Co. v. Employers Ins. Co. of Wausau</u>, 871 N.Y.S.2d 48, 63 (N.Y. App. Div. 2008)).  When faulty workmanship in building materials is the gravamen of an allegation of property damage, "under an injury-in-fact analysis, the injury may be said to occur at the time of installation."  <u>Stonewall Ins. Co. v. Nat'l Gypsum Co.</u>, No. 86 Civ. 9671 (JSM), 1992 WL 123144, at *14 (S.D.N.Y. May 27, 1992), <u>aff'd in part and rev'd in part on other grounds</u>, 73 F.3d 1178 (2d Cir. 1995).

Even if A-1's alleged non-performance could be said to be an "occurrence" triggering coverage, it took place entirely before the February 2011 through February 2012 coverage period of the policy at issue.  As discussed above, the UAC alleges that the defective work was performed circa 2005 and discovered by mid-2010, at which point the repair work began.  (UAC ¶¶ 11-15.)  The contract between Maxum and A-1 thus requires that any ensuing "property damage" "be deemed to occur" at some point circa 2005, and in all events no later than mid-2010.  (Pl.'s 56.1 ¶ 3; Policy at 24.)  Because the contract also excludes from coverage any property damage that does not "occur[] during the policy period," coverage does not lie.  (Pl.'s 56.1 ¶ 2; Policy at 9.)

A-1 argues that because the UAC alleges that some of the repair work occurred during the policy period, that injury constitutes "a continuous occurrence" bringing the damage within the policy period.  However, the case A-1 cites in

support of this proposition, <u>Cortland Pump & Equipment, Inc. v. Firemen's Insurance Co. of Newark, N.J.</u>, 604 N.Y.S.2d 633 (N.Y. App. Div. 1993), is inapposite in telling ways.  In <u>Cortland Pump</u>, the underlying damages stemmed from a leak "which allegedly caused or permitted gasoline to flow into the ground and eventually into two adjoining residential properties." <u>Id.</u> at 635.  This on-going source of damage fit into the policy's definition of "occurrence," which, like the policy in the instant action, reached "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." <u>Id.</u> at 636.  (Pl.'s 56.1 ¶ 3; Policy at 24.)  The same logic has guided the Second Circuit's determination that, "with respect to progressive diseases, permits triggering at various points when evidence shows injury to have occurred." <u>Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.</u>, 73 F.3d 1178, 1195 (2d Cir. 1995) (emphasis omitted).

Unlike a gas leak or a progressive disease, A-1's alleged failure to properly inspect B&V's work and recognize its deficiency is not a continuous occurrence creating new injuries in fact at different points in time.  Instead, the damage, if any, was sustained at the time of A-1's alleged breach.  In light of the "injury-in-fact" rule in New York law and the explicit provisions of the insurance contract that established when certain property damage could be said to occur, it is apparent that even if the allegations in the UAC were otherwise covered they would fall outside of the policy period.

Maxum does not owe a duty to defend or indemnify A-1 in the Underlying Action because that action does not contain allegations that create a reasonable possibility of coverage under the commercial general liability policy between Maxum and A-1.  It is entitled to a declaration of that fact.  Because Maxum has to date provided A-1 with a defense in the Underlying Action under an express reservation of right "to recover back defense costs," it is further entitled to recoup from A-1 defense costs Maxum has incurred in its defense of the Underlying Action.

IV.    CONCLUSION

For the reasons stated above, Maxum's motion for summary judgment is GRANTED.  The parties shall confer on a form of order of judgment and file either a joint proposed order or competing proposed orders within twenty-one (21) days.  The Clerk of Court is directed to terminate the motions at Docket Nos. 29 and 32, and to terminate this action.


SO ORDERED.

Dated:        New York, New York
              December 10, 2015

_____
        KATHERINE B. FORREST
        United States District Judge